UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

JEVON RICHARD PICCARD,

    Debtor.
_____/

Case No. 18-22427-dob
Chapter 13 Proceeding
Hon. Daniel S. Opperman

<u>OPINION REGARDING DEBTOR'S OBJECTIONS TO CLAIM NOS. 1 AND 2
OF GLORIA PICCARD (DOCKET NO. 58 AND NO. 59)</u>

The Court held an evidentiary hearing on objections filed by Debtor Jevon Piccard to Proof of Claims Nos. 1 and No. 2 of Gloria Piccard. The parties have filed post-hearing briefs and submitted affidavits and exhibits. The Court has considered the evidence and the filings regarding these matters and for the reasons stated in this Opinion, the Court overrules the Debtor's objections to claims.

<u>Findings of Fact</u>

Gloria Piccard is the former spouse of Debtor Jevon Piccard. A Judgment of Divorce was entered by the Kent County Circuit Court, Case No. 11-11587DM, on May 17, 2013, which included a child and spousal support obligation and a property settlement. While the divorce action was pending, an incident occurred between Debtor and Ms. Piccard, which resulted in Debtor being charged with assault with a dangerous weapon. Debtor was subsequently criminally charged for this offense and a Civil Judgment was entered in favor of Ms. Piccard on September 15, 2017. Debtor filed a bankruptcy case in the Western District of Michigan following the Judgement of Divorce. During that bankruptcy case, a few noteworthy determinations were made. The first was an Order dated April 4, 2014, which held the Judgment

1

of Divorce claim of Gloria Piccard as a domestic support obligation ("DSO").  That Order, entitled "Order Regarding Debtor's Objection to Claim No. 9 of Gloria Piccard" stated:

> **On March 25, 2014, an evidentiary hearing regarding the objection of Jevon Piccard (the "Debtor") to claim number 9, filed by creditor Gloria Piccard, was held before this court.  Jody Jernigan, Esq., appeared at the evidentiary hearing on behalf of the Debtor and Bernard Schaefer, Esq., appeared on behalf of Gloria Piccard.**
>
> **During the evidentiary hearing, the court admitted several exhibits into evidence and heard testimony from two witnesses:  the Debtor and Gloria Piccard.  At the conclusion of the hearing, the court rendered an extemporaneous oral bench opinion.  For the reasons set forth on the record, the court held that the claim of Gloria Piccard would be allowed in the total amount of $28,065.91.  Of that amount, the court determined that $24,545.91 is entitled to first priority as a domestic support obligation ("DSO"), see 11 U.S.C. § 101(14A), § 507(a)(1) and § 1322(a)(2), and/or is held in constructive trust for the benefit of Gloria Piccard, see McCafferty v. McCafferty (In re McCafferty), 96 F.3d 192 (6th Cir. 1996).**
>
> **NOW, THEREFORE, IT IS HEREBY ORDERED that the proof of claim filed by Gloria Piccard be, and hereby is, allowed in the total amount of $28,065.91.**
>
> **IT IS FURTHER ORDERED that $24,545.91 of Gloria Piccard's allowed claim is entitled to first priority as a DSO and/or is held in constructive trust for the benefit of Gloria Piccard.**
>
> **IT IS FURTHER ORDERED that a copy of this order be served by electronic means (ECF) upon the following persons:**
>
> > **Jody Jernigan, Esq. (ECF)**
> > **Bernard Schaefer, Esq. (ECF)**
> > **Barbara P. Foley, Esq. (ECF)**

(*In re Jevon Piccard*, Docket No. 56, Case No. 13-07386, Bankr. W.D. Mich., Apr. 4, 2014).

The Western District Bankruptcy Court also determined in an Adversary Proceeding filed while the previous bankruptcy case was pending that this Civil Judgment was non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).  This determination was made in an Order dated November 27, 2017, and stated:

> **UPON HEARING** the Plaintiff's Motion for Summary Disposition on November 21, 2017, the Court having reviewed the pleadings, and files and records in this case, and having listened to argument from counsel for both parties, and being fully advised:
>
> **IT IS ORDERED**, that Plaintiff's Motion for Summary Disposition is granted for the reasons stated on the record and the Judgment entered in Kent County Circuit Court Case No. 16-05286-NO, in the amount of $58,011.63, on September 15, 2017, is hereby declared non-dischargeable in the Debtor's bankruptcy case, pursuant to 11 U.S.C. § 523(a)(6).
>
> **IT IS FURTHER ORDERED** that this is a final order.

(*Piccard v. Piccard (In re Jevon Piccard)*, Docket No. 34, Case No. 13-80335, Bankr. W.D. Mich., Nov. 27, 2017).

Thereafter, Debtor's mother, Virginia Piccard, died on January 13, 2018. Previously, Virginia Piccard placed certain assets into the Virginia Martha Piccard Living Trust, which assets poured over into the Virginia Piccard Protection Trust upon Virginia Piccard's death (the "Trust Property"). Debtor and his brother, Jason Piccard, became entitled to the Trust Property. The value of Debtor's share in the Trust Property was litigated in the Kent County Probate Court. Ultimately, the amount of $34,689.72 was determined to be Debtor's share. The successor trustee of the Protection Trust has paid over these funds to the Trustee in this bankruptcy case.

Ms. Piccard filed two claims in this case. The first is Proof of Claim No. 1, filed in the amount of $26,393.56, arising out of the Judgment of Divorce, which amount includes interest through December 27, 2018, as well as fees and costs. It is filed as secured by the Trust Property, which has an indicated value of $60,000.00 and is perfected by a writ of garnishment. This Proof of Claim further states that all or part of this claim is entitled to priority as a domestic support obligation ("DSO") under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). However, the amount entitled to priority is left blank. The second is Proof of Claim No. 2, filed in the amount of

$60,920.33, arising out of the September 15, 2017 "Judgment for Spousal Assault," which amount includes interest through March 1, 2019. It is filed as secured by "trust property," which has an indicated value of $72,500.00 and is perfected by a judgment lien and writ of garnishment.

Debtor objects to these claims, arguing as to Claim 1 that that Gloria Piccard did not follow the terms of the Judgment of Divorce and sell all of the property that was to be offered for sale. Debtor calculates that the total offset would be approximately $7,500, which is based upon Debtor's fifty percent share of the total amount of $15,000 for items that should have been sold at the court-ordered auction. Additionally, Debtor asserts that this claim should be offset and partially disallowed because she did not follow the directive of the Judgment of Divorce by not signing the documentation necessary for their son to receive Social Security payments, which would have reduced the child support that would have been due from Debtor. Finally, Debtor asserts that he is entitled to a greater retroactive reduction. Debtor does not object to the secured status of this claim.

Gloria Piccard responds that the issue of what property should have been sold had already been raised in the Kent County state court, which ruled in favor of her on this issue. Thus, any offset claimed by Debtor in this regard is barred by collateral estoppel. Ms. Piccard concedes that this claim should be reduced by $4,006.46, which represents the amount of spousal support included in the Friend of the Court Claim, Proof of Claim No. 4. Thus, the total claimed by Gloria Piccard for her Claim No. 1 is $22,387.10.

As to Claim 2, which is filed as secured, Debtor disputes that this claim is secured because a writ of garnishment that was served upon the Trust Property was within the one-year preference period under 11 U.S.C. § 547(b)(4)(B), and is avoidable. Specifically, the writ was

served upon Debtor, as the trustee of the Trust at the time, on February 2, 2018, which is more than 90 days before the Debtor's bankruptcy petition, but less than one year prior to the petition. Debtor asserts that Gloria Piccard is an "insider," and thus subject to the one-year preference look-back period under Section 547(b)(4)(B). He argues that since this is an avoidable preference, Gloria Piccard's claim cannot be secured. Likewise, he posits that a judgment lien recorded on Debtor's house by Gloria Piccard 21 days prior to Debtor's bankruptcy filing is avoidable as a preference under Section 547(b)(4)(A) as it was filed within the 90-day preference period.

Gloria Piccard responds that she is not an "insider" for preference purposes, making Section 547(b)(4)(B) inapplicable. Thus, the February 2, 2018 writ of garnishment is not avoidable and secures her claim in the Trust Property. Gloria Piccard does not appear to take issue with the judgment lien on Debtor's home.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (B) (allowance or disallowance of claims against the estate).

## Law

Proofs of Claim: Prima Facie Validity

Federal Rule of Bankruptcy Procedure 3001(f) states:

> (f) Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

5

The objecting party to the claim has the burden of going forward and of introducing evidence sufficient to rebut the presumption of validity. The objection must have probative force equal to the contents of the claim. *In re Unimet Corp.*, 74 B.R. 156 (Bankr. N.D. Ohio 1987). The objecting party's burden is by a preponderance of the evidence. *Cal. State Bd. Of Equalization v. Official Unsecured Creditors' Comm. (In re Fid. Holding Co., Ltd.)*, 837 F.2d 696 (5th Cir. 1988). More than a mere unsubstantiated objection to form is required. *Garner v. Shier (In re Garner)*, 246 B.R. 617, 623 (B.A.P. 9th Cir. 2000). If the objecting party produces evidence to refute at least one of the allegations essential to the legal sufficiency of the claim, the burden of persuasion shifts back to the claimant. *In re Hughes*, 313 B.R. 205 (Bankr. E.D. Mich. 2004).

Res Judicata and Collateral Estoppel

"As a general matter, the doctrine of res judicata forecloses relitigation of matters that were determined, or should have been raised, in a prior suit in which a court entered a final judgment on the merits." *Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1143 (6th Cir. 1985) (citing *Migra v. Warren City School District*, 465 U.S. 75 (1984)).

> "Res judicata" has both a general and a specific meaning. In its general sense it refers to the preclusive effects of former proceedings. This broad category is divided into two more specific groups: "res judicata" in its narrower sense, and "collateral estoppel." Res judicata, in its narrow sense, refers to claim preclusion. Collateral estoppel refers to issue preclusion. Since the differences between the two require significantly different analyses, it is important to keep clear which
> h is being discussed. . . . For clarity we prefer the more specific term, "collateral estoppel."

*Dodrill v. Ludt*, 764 F.2d 442, 443 (6th Cir. 1985).

Res judicata will bar a debtor from discharging debts held to be nondischargeable in a prior case. *In re Smith*, 401 B.R. 783 (Bankr. D. Md. 2008) (citing *Paine v. Griffin (In re Paine)*, 283 B.R. 33, 37 (B.A.P. 9th Cir. 2002) ("In other words, once nondischargeable, always

6

nondischargeable."); *Royal American Oil and Gas Co. v. Szafranski (In re Szafranski)*, 147 B.R. 976, 989 (Bankr. N.D. Okla. 1992) ("Since the nondischargeable character of Royal's debt has already been determined, and is preserved from re-determination or subsequent discharge by 11 U.S.C. § 523(b), there is no need for further evidence on the matter."); *see also Policemen's and Firefighters' Retirement Fund v. Tranter (In re Tranter)*, 245 B.R. 419, 420 (Bankr. S.D. Fla. 2000) (finding a debt previously held nondischargeable to be nondischargeable in a subsequent bankruptcy)).

While collateral estoppel is applicable in bankruptcy dischargeability proceedings, *see Grogan v. Garner*, 498 U.S. 279, 248 (1991), a bankruptcy court must determine whether applicable state law would give collateral estoppel effect to the state court judgment. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Under Michigan law, collateral estoppel has been defined by the Michigan Supreme Court:

> Collateral estoppel precludes the relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was 1) actually litigated and 2) necessarily determined.

*People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990). An issue may be considered "actually litigated" for collateral estoppel determinations if it "is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact." A trial is not necessarily required. *Latimer v. Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich. Ct. App. 1986). If an issue is essential to the judgment, it is "necessarily determined." *Gates*, 452 N.W.2d at 631.

Section 523(a)(5), Plan Treatment and Priority of Claims

In a Chapter 13, Section 1328(a)(2) excepts from discharge debts under Section 523(a)(5). Thus, the meaning of "domestic support obligation" becomes relevant.

Section 1322(a)(2) states:

> (a) The plan shall–
>
> ****
>
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

Section 507(a)(1) states, in relevant part:

> (a) The following expenses and claims have priority in the following order:
>
>> (1) First:
>>
>>> (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.
>>>
>>> (B) Subject to claims under subparagraph (A), allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition, are assigned by a spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt) or are owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law.

<u>Recovery of Transfers by Garnishment</u>

A garnishment is perfected when the notice is served. See *Battery One-Stop Ltd. v. Atari Corp. (In re Battery One-Stop Ltd.)*, 36 F.3d 493 (6th Cir. 1994) (analyzing Ohio law, and

8

holding that similar to Michigan law, citing *Bleau v. First of America Bank-Central (In re Arnold)*, 132 B.R. 13 (Bankr. E.D. Mich. 1991), a garnishment is perfected when the garnishment notice is served).

Section 522(h) of the Bankruptcy Code permits a debtor to avoid transfers that are avoidable by trustees under sections 544, 545, 547, 548, 549, or 724(a), if the trustee does not attempt to avoid those transfers. *See* 11 U.S.C. § 522(h). 11 U.S.C. § 522(h) states as follows:

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if-(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and(2) the trustee does not attempt to avoid such transfer.

In order for a transfer to be avoidable as a preference under Section 547(b), the Plaintiff must prove that all of the elements of Section 547(b) have been met. *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 706 F.2d 171, 172 (6th Cir.), *cert. denied sub nom.*, *Ranier & Assocs. v. Waldschmidt*, 464 U.S. 935 (1983). Section 547(b) states:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made –
>
>   (A) on or within 90 days before the date of the filing of the petition; or
>
>   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if–

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

If the debtor is an individual, 11 U.S.C. § 101(31) defines "insider" as:

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control;

Courts have examined whether former spouses may qualify as "insiders," which involves an examination into the "closeness of the parties' relationship, keeping in mind the following considerations:

The length of the parties' marriage;

the length of time between the termination of the marriage and the preferential transfer;

whether the parties, after the termination of their marriage, maintain any sort of business relationship together;

the extent to which the parties' divorce was adversarial in nature;

whether the parties continued to live together and/or share living expenses;

the time between the parties' physical separation and divorce;

the extent to which the parties' marital assets and liabilities continue to be intertwined.

*Hunter v. Dupuis (In re Dupuis)*, 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001).

<u>Analysis and Conclusion</u>

As to Claim 1, Debtor is barred by collateral estoppel from arguing this claim is not a DSO under Section 523(a)(5). A valid and final judgment was entered in Debtor's prior

bankruptcy case by the Western District Bankruptcy Court on April 4, 2014, in which this issue was actually litigated and necessarily determined. As such, this $22,387.10 claim is entitled to nondischargeable status under Section 523(a)(5), which in turn entitles such to priority status under Section 507(a)(1).

The Court now considers the reductions to this claim as asserted by Debtor. As to the reduction claimed for assets that Gloria Piccard was to sell but allegedly did not, collateral estoppel bars Debtor from relitigating these issues. The Kent County Circuit Court held that there should be no reduction in amounts owed to Gloria Piccard for this reason. Specifically, a motion was brought by Debtor in the Kent County Circuit Court raising this same failure to sell issue, which was denied by that court after hearing. (Gloria Piccard, Exhibit 5, Jan. 21, 2020 evid. hg.). Even if collateral estoppel did not bar relitigation of this issue, Debtor put forth insufficient evidence to support his allegations in this regard, other than his self-serving testimony.

The Court now turns to Debtor's argument that Claim 1 should be reduced because Gloria Piccard failed to "sign the Social Security documentation necessary for their son to obtain Social Security, which would have reduced the child support which would have been due from Debtor." First, this statement is not supported by evidence. Second, even if true, Debtor has not provided the Court with a connection between this failure to sign this document and a claim reduction in an amount certain in favor of Debtor.

Debtor's final objection regarding Claim 1 concerns his disagreement with the Kent County Circuit Court's ruling as to a retroactive reduction in support payments. Again, collateral estoppel bars relitigation of this issue as one having been actually litigated and necessarily determined by the state court by motion brought by Debtor and denied after hearing.

As to Claim 2, Debtor is barred by res judicata from asserting this claim is fully allowed in the amount claimed, and that such is nondischargeable under Section 523(a)(6). However, this is not Debtor's dispute with this claim—his objection is that this claim is not secured by the February 2, 2018 writ of garnishment. The writ of garnishment was served more than 90 days, but less than one year prior to Debtor's December 27, 2018 bankruptcy filing. The secured status of this claim hinges upon whether the writ may be avoided which in turn hinges upon whether Gloria Piccard was an "insider" for purposes of Section 547(b)(4)(B).

The Court first notes that no adversary proceeding was commenced to determine whether this lien can be avoided for this reason. Looking beyond that procedural issue, the Court concludes that the commencement of an adversary proceeding would not have made a difference in the end. The Court examines the circumstances surrounding the relationship between Debtor and Gloria Piccard and the relevant time, keeping in mind the burden is upon Debtor to refute the prima facie validity of Ms. Piccard's claim. All the Court has been given by Debtor to support Ms. Piccard's status as an "insider" is Debtor's mere labeling as such. There is no evidence to support any of the ex-spouse considerations as discussed in the *Dupuis* case in Debtor's favor. The evidence that has been put forth in fact supports Ms. Piccard's status as a <u>non</u>-insider. Significant time—almost 5 years—had elapsed between the Judgment of Divorce and the transfer. Further, there is no dispute that Debtor and Ms. Piccard had an adversarial divorce, and shared no other relationship, business or otherwise at the time of the transfer. Debtor places his entire argument on the mere status of Ms. Piccard as an ex-spouse as sufficient for "insider" status. Without further extrinsic evidence or affidavits to support this assertion, Debtor has not met his burden. Accordingly, the Court concludes that the February 2, 2018 writ of garnishment cannot be avoided. Claim 2 is a secured claim.

`      The Court agrees that the judgment lien recorded on Debtor's home is an avoidable preference under Section 547(b)(4)(A).  However, without an adversary proceeding seeking a judgment to this effect, the judgment lien in this regard stands.

For the reasons stated in this Opinion, the Court overrules Debtor's objections to Claim 1 and Claim 2 filed by Gloria Piccard.  Claim 1 is allowed as a secured claim in the amount of $22,387.10, and shall be entitled to priority as a DSO under Section 507(a)(1).  Claim 2 is allowed in the amount of $60,920.33, and is partially secured by: the Trust Property in the amount of $34,689.72, and the Debtor's residence, to the extent of its value, no less than the $12,500.00 purchase price.

Counsel for Gloria Piccard, as the prevailing party, is directed to prepare and present an order consistent with applicable court rules.

**Not for Publication**

**Signed on March 24, 2021**

/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**